**William C. HOLMES, Plaintiff,**

**v.**

**The THEW SHOVEL COMPANY, Defendant.**

**No. C 64–240.**

United States District Court
N. D. Ohio, E. D.
July 1, 1969.

**140**

Christopher B. Fagan, Fay, Sharpe & Mulholland, and F. Rush McKnight, Calfee, Halter, Calfee, Griswold & Sommer, Cleveland, Ohio, for plaintiff.

Jarrett Ross Clark, Wolfe, Hubbard, Voit & Osann, Chicago, Ill., Robert Kennedy, Squire, Sanders & Dempsey, Cleveland, Ohio, and William A. Denny, Milwaukee, Wis., for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This is an action for patent infringement and unfair competition. The plaintiff, in Count 1 of his complaint, has alleged that the defendant is infringing plaintiff's patent No. 3,043,445, which relates to a device for controlling the boom on certain power cranes. Count 2 of the complaint seeks damages for the breach of a confidental relationship. Plaintiff alleges in Count 2 that he disclosed certain information to the defendant in confidence and with the understanding that if the information were utilized by the defendant, plaintiff would be compensated.[1]

The plaintiff, William C. Holmes, is a resident of Michigan. His occupation is that of a crane operator. He has never been an employee of the defendant, although he has operated cranes manufactured by the defendant in the course of his employment.

The defendant, the Thew Shovel Company, was until 1964 a corporation organized and existing under the laws of the state of Ohio. In 1964 the Thew Shovel Company was dissolved by merger into Koehring Company of Milwaukee, Wisconsin. The business of the Thew Shovel Company is now being conducted as the Thew-Lorain Company, a division of Koehring Company.

The Court has jurisdiction of this action by virtue of Title 28, U.S.C.A. § 1338. The Court also has jurisdiction under Title 28, U.S.C.A., § 1338(b) and under Title 28, U.S.C.A., § 1332.

The defendant has filed a counterclaim seeking compensatory and injunctive relief for alleged unfair competition by the plaintiff. By agreement of the parties prior to trial, a permanent injunction may be entered against the plaintiff on this counterclaim in the event the plaintiff does not prevail upon his complaint. As a result of this agreement, no proofs

---

1. A third count seeking recovery for unjust enrichment was dismissed by the plaintiff.

were offered at the trial with respect to the counterclaim.

Plaintiff demanded and was granted a jury trial of the issues in this case. The Court thereafter made an extensive inquiry into the question of which issues relevant to this litigation are factual issues to be determined by the jury and which issues are questions of law to be determined by the Court.

It appears from virtually all the recent authorities considering this question that the ultimate issue of whether a patent meets the requisite standard of invention is a question of law rather than one of fact. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Kaiser Industries Corp. v. McLouth Steel Corp., 400 F.2d 36 (6th Cir. 1968); Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406 (6th Cir. 1964); Swofford v. B & W, Inc., 251 F.Supp. 811 (S.D.Tex.1966), aff'd 395 F.2d 362 (5th Cir. 1968). This question of validity is to be determined on the basis of certain factual inquiries:

> "Several basic factual inquiries are essential, however, to establish a foundation upon which the legal conclusion can be based. The scope and content of the prior art must be determined; differences between the prior art and the claims at issue must be ascertained; and the level of ordinary skill in the pertinent art must be resolved." Kaiser Industries Corp. v. McLouth Steel Corp., 400 F.2d at 41. See also Young Corp. v. Jenkins, 396 F.2d 893 (10th Cir. 1968); Graham v. John Deere Co., *supra*.

The cases cited above and virtually all the other recent cases on this subject disclose the following: (1) there are four "basic" issues in the normal patent litigation; (2) these issues are: (a) the state of the prior art, (b) the improvements, if any, which the patented article makes over the prior art, (c) whether these improvements, considered in light of the prior art, are sufficiently novel to meet the statutory tests of inventiveness, (d) whether the accused device infringes upon the patent device; (3) the issues of the state of the prior art, and the improvements made over the prior art, and the issue of infringement are all questions of fact determined by the jury. The issue of the validity of the patent is a question of law to be determined by the Court.

In accordance with the Court's conclusion as to the distribution of these various issues, the Court submitted a series of interrogatories to the jury. Interrogatories 1 through 8 related to the issue of infringement and inquired whether the plaintiff had proved that the accused device included elements claimed in the patent. Interrogatories 9 and 10 articulated the general standard for determining infringement and inquired whether the jury found that the accused device infringed relevant claims on the patent.

The next twelve interrogatories related to the issue of patent validity. The parties stipulated as to the relative body of prior art, and interrogatories 1 through 4 inquired whether the patented device constituted an improvement over the various aspects of this prior art. Interrogatory No. 5 inquired into whether the patented device produces an unusual result which would not have been expected by a person having ordinary skill in the art. Interrogatory 6 required the jury to relate these unusual results to each claim in the patent. Interrogatories 7 and 8 performed a similar function by inquiring into whether the patented device functions in an unusual manner which would not have been expected by a person having ordinary skill in the art. Interrogatories 9 and 10, similarly operating, inquired into whether the patented device employed an unusual means which would not have been expected by a person having ordinary skill in the art.

Interrogatories 11 and 12 inquired into whether the patented device defines a mechanism which would have been obvious to a man of ordinary skill in the art. These inquiries are, of course, very close to the issue of patent validity which the Court must decide itself. However, the

Court submitted these questions to the jury solely for the purpose of avoiding a retrial of this action in the event a higher court determines that this question should properly be submitted to a jury where a jury is demanded.

The jury answered all the interrogatories in a manner favorable to the plaintiff.

The plaintiff's second count, that for unfair competition, was also submitted to the jury by way of interrogatories. The jury answered these interrogatories in a manner favorable to the plaintiff also.

The defendant has now filed a motion for judgment notwithstanding the verdict. The following issues are presented by this motion: (1) Are the patent claims in suit not infringed as a matter of law, (2) Is the patent in suit invalid by reason of the plaintiff's public use and sale of the device more than one year prior to the effective filing date of the patent in suit, (3) Is the patent in suit unenforceable by reason of the doctrine of "unclean hands," (4) Is the patent in suit anticipated by the plaintiff's own use and sale of an earlier patent device, (5) Does the patented device meet the statutory standard of invention, and (6) Are the jury's findings on the issue of unfair competition contrary to the evidence.

In the course of his activities as a crane operator, the plaintiff observed that in certain of the cranes manufactured by the defendant it was possible for the boom to descend inadvertently. This presented an extremely dangerous possibility. The boom, falling without restraint, could inflict great injury upon property and persons on the ground. If the crane operator was able to react quickly enough to apply the brake to the falling boom, momentum of the boom, suddenly restrained by the brake, could cause a severe rocking in the crane cab, which would itself be dangerous.

This situation, in which a boom might fall unrestrained, was related to the design of the Thew-Lorain crane itself. This crane had one clutching system to raise the boom and another clutching system to lower the boom. It also had a brake which operated independently of both these systems. The clutching system for lowering the boom was of the pawl and ratchet variety. This pawl and ratchet clutch could remain engaged both during the time the boom was being lowered and during the time in which it was being raised. When engaged, however, it made a loud clacking sound, which many of the operators found offensive. As a result, the operators often disengaged the pawl and ratchet clutch except when lowering the boom. If they attempted to lower the boom and forgot to re-engage the pawl and rachet clutch, the boom would free fall unless restrained by the brake.

Plaintiff undertook to develop a safety device to assure that the boom would not be lowered in a so-called "live" state. Beginning in 1949, plaintiff developed a series of six devices designed to prevent this occurrence. These efforts eventually led to two patents. The first of these is U. S. Letters Patent #2,914,303 (hereinafter referred to as the '303 patent). Plaintiff applied for this patent on November 14, 1955, and it was issued on November 24, 1959. This is not the patent in suit in the present litigation. The patent in suit here is U. S. Letters Patent #3,043,445 (hereinafter referred to as the '445 patent). The original application for the '445 patent is filed on November 20, 1957. Plaintiff filed a continuation-in-part application on January 25, 1961. The patent was eventually granted on the basis of this continuation in part on July 10, 1962.

The '445 device is designed for use on certain of the Thew Shovel Company cranes. As noted above, these cranes utilized a pawl and ratchet clutch for lowering the boom and a friction clutch for raising the boom. They also employed a brake which was independently operated.

The Holmes '445 device provides a means by which these three control elements can be operated simultaneously to ensure that the boom cannot be raised or lowered except while one of the two

clutches is engaged. The Holmes device provides a means for interconnecting the operation of these three component control elements by the operation of one control lever. When this lever is moved, the Holmes device engages one clutch while disengaging the other clutch and simultaneously releases the brake.

As we noted before, previous to the plaintiff's invention, each clutch was operated independently of the other. The brake was also operated independently. Before the plaintiff's invention it was possible for an operator to disengage the hoisting clutch in order to lower the boom but to forget to re-engage the lowering clutch, thus permitting the boom to fall unrestrained. The plaintiff's device makes such an occurrence an impossibility.

The defendant asserts that the patent claims in suit are not infringed as a matter of law. In this connection the Court notes that the jury responded to an extensive set of interrogatories inquiring into this issue. The jury found that the defendant's accused device included elements infringing each of the claims in suit. The jury found that the accused device included parts which are substantially similar to the plaintiff's claims, and which operate in substantially the same way to produce substantially the same result as the patented device.

There was substantial evidence to support each of these findings by the jury. The defendant's accused device represents merely an adaptation of the patented device to the defendant's re-designed crane. The defendant has adapted the principles and operation of the patented device to fit its slightly modified and re-designed crane machine. Although the accused device is slightly different in appearance from the patented device, these differences are more apparent than significant and are related to adapting the patented device to a slightly different crane framework rather than incorporating a different principle or means of operation or design. The Court has concluded that the jury's determination that the accused device infringes on the '445 patent is not only supported by substantial evidence, but is the correct and proper conclusion on the basis of this record.

The defendant asserts that the '445 patent is invalid by reason of the plaintiff's public use and sale of the device more than one year prior to the effective filing date of the patent. Title 35, U.S.C.A., § 102(b) provides that a device may not be patented if it was in public use or sale more than one year prior to the filing date of the application. The defendant's position is that the effective filing date of the '445 patent is 1961. The plaintiff asserts that the effective filing date is 1957. It is not disputed that the '445 device was publicly sold by the plaintiff subsequent to 1957 and more than one year prior to 1961.

Plaintiff's original application for the '445 patent was filed on November 20, 1957. On January 25, 1961, plaintiff filed a continuation in part of this earlier application. The issue before the Court is whether the plaintiff is entitled to a November, 1957, filing date or to a January, 1961, filing date.

Title 35, U.S.C.A., § 120 provides: "An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title is an application previously filed * * * by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application * * * and if it contains * * * a specific reference to the earlier filed application."

This provision has been construed to impose four requirements to entitle a person to the filing date of the first application: (1) Both applications must disclose the same invention, (2) the applications must be made by the same inventor, (3) the second must be filed before patenting of the first application or its abandonment, and (4) the second application must contain a specific reference to the earlier application.

There is no dispute that the plaintiff has satisfied the latter three require-

ments. Defendant contends, however, that the second application, the continuation in part, contains "new matter" and that, therefore, the plaintiff is not entitled to the filing date of the 1957 application.

█ With respect to the first requirement of Section 120, the test for determining whether the same invention is disclosed is whether there is sufficient disclosure in the first application to support the claims in the second application. Application of Ruscetta, 45 CCPA 968, 255 F.2d 687 (1958); Fujitsu, Ltd. v. Sprague Elect. Co., 264 F.Supp. 930 (S.D. N.Y.1967); Indiana Gen. Corp. v. Lockheed Aircraft Corp., 249 F.Supp. 809 (D. Cal.1966). It is manifest in the present case that the 1957 application contains sufficient disclosure to support all the claims in the 1961 application.

The changes in the 1961 application add nothing to what a person skilled in the art would have learned from the original application; therefore, the second application has not introduced new matter. E. I. DuPont de Nemours & Co. v. Phillips Petroleum Co. et al., 189 F.Supp. 1. The defendant has pointed out a number of minor errors in the original specification. These were corrected in the 1961 application. None of these alter the substance of the claimed device, and the structure and operation of the device would have been obvious to anyone skilled in the art on the basis of the 1957 application. M & W Elect. Mfg. Co. v. Gatto Elect. Supply Co., 260 F.Supp. 891 (N.D.Ohio 1966). The Court notes that Figures 2 and 3 in both applications are virtually identical. Both disclose the same device, and the plaintiff has obviously not attempted to add significant elements to the device disclosed in his 1957 application by filing a later application. Indeed, many of the items corrected in the 1961 application relate to the description of the crane to which the Holmes device is attached. They do not seek to expand the operation of the Holmes device itself. For these reasons the Court has concluded that the plaintiff is entitled to the 1957 filing date;

and that, therefore, the patent is not invalid by reason of prior sale and use more than one year before the application for patent.

█ Defendant asserts that the '445 patent is unenforceable by reason of the equitable doctrine of "unclean hands." This, like the previous issue, is a matter to be decided by the Court and not by the jury. The defendant's contention with respect to the issue of "unclean hands" relates to a statement made by the plaintiff in his 1961 application for the '445 patent. The 1957 application includes the required statement by the applicant under oath that he has not sold or placed the article in public use more than one year prior to the date of his application. Defendant does not assert that this statement is untrue. Subsequent to the 1957 application, however, the plaintiff began selling the subject device. When he filed his continuation-in-part application in 1961, he included therein a statement under oath that he had not made any public sale or use of the subject article more than one year prior to the date of the 1961 application. This statement was, of course, not true. The defendant contends that this statement is a positive misrepresentation to the Patent Office; and that the plaintiff is thereby barred from asserting any rights under the patent eventually issued to him, by reason of the doctrine of "unclean hands."

█ The Court finds that the affidavit submitted in connection with the 1961 application was prepared by plaintiff's attorney. The Court further finds that the inclusion of the statement relating to prior sale and use of the device in the 1961 application was a result of inadvertence on the part of plaintiff's attorney, and that the plaintiff had no intention of misrepresenting the true state of facts to the Patent Office. This being the case, plaintiff is not guilty of any intentional misrepresentation to the Patent Office and cannot, therefore, be barred from asserting his patent by the equitable doctrine of "unclean hands."

In any event, the inclusion in the 1961 application of the statement relating to

prior use and sale of the device was harmless. This statement is not required to be made part of the oath which an applicant must file with his application for a patent. Title 35, U.S.C.A., § 115, which sets forth the requirements of the oath, does not appear to require any statement relating to prior use or sale of the subject device. Defendant does not suggest that any of the other statements in the oath were untrue, and it is difficult to imagine how the error in this unnecessary and superfluous statement could have interfered with or affected the Patent Office proceedings. The defendant asserts that because of the plaintiff's misrepresentation, the Patent Office had no occasion to pass on the sufficiency of the disclosure in the first application to support the new claims. There is no evidence in the record indicating that the Patent Office failed to consider the first application in passing upon the patentability of the second application. In fact, the second application specifically states that it is a continuation in part, thereby referring the Patent Office to the plaintiff's earlier application.

Furthermore, since the Court has previously determined that the 1961 application does not include new matter, the second application is not required to contain any oath at all. Aerosol Research Co. v. Scovill Mfg. Co., 334 F.2d 751 (7th Cir. 1964); Locklin v. Switzer Bros., Inc., 299 F.2d 160 (10th Cir. 1961), cert. den. 369 U.S. 861, 82 S.Ct. 950, 8 L.Ed.2d 18. The oath in the 1961 application being entirely superfluous, it is difficult to argue that the existence of one inadvertently false statement therein could prejudice the entire proceeding before the Patent Office.

The defendant asserts that the '445 patent is invalid on the grounds that it was anticipated by the plaintiff's '303 patent. The jury answered a number of interrogatories relating to this issue. The jury found that the '445 patent was an improvement over the '303 patent. The jury found that the '445 patent produces an unusual result, functions in an unusual manner, and defines a mechanism employing unusual means, all of which would not have been expected by a person having ordinary skill in the art and having knowledge of all prior art. The jury also found that the '445 patent which would not have been obvious to a person having ordinary skill in the art and having knowledge of all prior art, including the '303 patent, employed unusual means.

The Court concurs with the jury that the '445 patent was not anticipated by the '303 patent. The '445 patent represents a substantial and significant advance over the '303 device. The '303 device was a crude attempt to interconnect the operation of the two clutches. The evidence indicated that it never worked well and it often came apart in use. It was cumbersome and required the use of extension rods within the cab of the crane. Most significantly it did not employ a linkage interconnecting the brake release lever and the hoist shaft clutch.

The '445 device on the other hand works well. Although it performs generally the same function as the '303 device, it has far fewer parts and does not require the use of portions of the crane cab. In addition, it represents a substantial advance over the '303 device in that it employs for the first time a linkage interconnecting the brake release lever and the hoist shaft clutch. Among other things, this permits an efficient sequence of control from boom lowering to idle to boom raising. It permits use of the brake in this sequence automatically to prevent lowering the boom during the shift.

██ It is true that the '445 device performs generally the same function as the '303 device, but it is a substantial improvement in the art of the '303 device. It performs that function in a novel and unusual way representing true inventiveness. "In order to anticipate an invention, it is necessary that all of the elements of the invention or their equivalents be found in one single description or structure, where they do substantially the same work in substantially the same way." Allied Wheel Prods. v. Rude, 206

F.2d 752 (6th Cir. 1953). It can hardly be said that the '303 device meets this test as applied to the '445 device. The '303 device did not anticipate the '445 device.

The defendant also contends that the patented device does not meet the statutory standard of invention. The Court must, therefore, determine whether the patented device "would have been obvious to one skilled in the art." Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co., *supra.* The jury also answered interrogatories relating to this issue. The parties stipulated that the relevant prior art included (1) the unit crane, (2) the Insley crane, (3) the Wayne crane, (4) the U. S. Airborne crane, (5) the Thew Shovel Class 7–8 crane, (6) the Holmes device represented in the '303 patent, and (7) the Thew Shovel Class 4–5 crane made before 1957. The jury found that the '445 patent represents an improvement over each of these elements in the prior art. In addition, the jury found that the '445 patent, as related to this prior art, defines a mechanism which produces an unusual result, functions in an unusual manner, and employs an unusual means, all of which would not have been expected by a person having ordinary skill in the art and having knowledge of all prior art as of November 20, 1957. The jury also found that the '445 patent defines a mechanism which would not have been obvious to a man of ordinary skill in the art who had knowledge of all the prior art as of November 20, 1957. The Court notes that the Patent Office granted the plaintiff a patent on the '445 device, and this patent is presumed to be valid unless overcome by clear and convincing evidence presented by the defendant. The jury concluded that the defendant had not presented such evidence, and the Court agrees.

The '445 device is not obvious to any person having knowledge of prior art as defined by the parties. The '445 device satisfied a long-standing need for certain of the Thew cranes. The independent operation of the two clutches and the brake added a dangerous element of memory to the operations of these Thew cranes. This memory factor had resulted in some serious injuries to persons and property and had existed for many years. Plaintiff began developing a safety mechanism to remove this memory element in 1949 or 1950. His work produced a series of six machines culminating in the '445 device. During almost every stage of this development, the officers and agents of the defendant expressed interest in his work, and many of the employees of the Thew Shovel Company spoke with the plaintiff. Many of these discussions were initiated by officers and agents of the defendant; and, most significantly, the defendant eventually re-designed certain of its cranes to incorporate a mechansim strikingly similar to the '445 device. All of this indicates that there was a recognized need for a device such as the plaintiff's, and that this need was recognized by the defendant itself for a long period of time.

The Court finds that the Holmes device represented in the '445 patent is an inventive advance over the prior art. None of the earlier cranes which are included as part of the prior art (by stipulation) contained the elements present in the '445 patent. The '445 device was the first successful mechanism for interconnecting the two power shafts and the brake release of the Thew 4–5 cranes. It solved the problem related to the peculiar design of the Thew 4–5 cranes, which was unlike any other crane in the industry. The Holmes device provided a means by which the three independent control elements could be operated together. Prior to the '445 patent, this had not been successfully accomplished. This problem derived from the particular design of the Thew crane and was not similar to the situation of other cranes in the industry. The Court finds that the '445 device was novel, unusual and inventive and was not obvious to a person having knowledge of crane art at the time of the invention.

The defendant challenges the jury's determination with respect to count 2 of the complaint on the ground that it is not

supported by evidence in the record. Count 2 relates to the plaintiff's claim for unfair competition. Plaintiff asserts that he disclosed confidential information to the defendant with the expectation that it would remain confidential; and that if the defendant disclosed it or utilized it, it would compensate the plaintiff. This issue was submitted to the jury by way of interrogatories. The jury found that the plaintiff developed valuable information pertaining to control devices of the Thew-Lorain cranes. The jury further found that a confidential relationship existed between the parties under the terms of which could reasonably be expected by both parties and that Holmes would be compensated in the event his valuable information was used by Thew Shovel. The jury found that Thew Shovel acquired knowledge of the valuable information from Holmes and that he did not, prior to or at the same time, disclose the information valuable to Thew Shovel to persons other than Thew Shovel. The jury further found that Thew Shovel knowingly used this valuable information, which Holmes disclosed only to Thew. Specifically, the confidential information which the jury found the plaintiff disclosed to the defendant was as follows: (1) "Communications with Thew Shovel Company and W. C. Holmes with letters and personal meetings." (2) "Patents and valuable information, including blueprints." The jury found that Holmes did not disclose this information to others prior to its use by Thew Shovel.

There was substantial evidence in the record to the effect that during the course of the development of plaintiff's safety mechanisms, he had a series of meetings with the employees of the defendant. At these meetings and through subsequent correspondence, plaintiff was encouraged by these employees to disclose his developments to the defendant and he did so. There was also substantial evidence to the effect that the plaintiff reasonably believed that the disclosures were made in confidence and would not be utilized or disclosed by the defendant without his permission and without compensating him. There was also substantial evidence to the effect that at the time the plaintiff made his disclosures to the defendant, he had not disclosed this information to others.

■ Much of the information he disclosed related to the manner of operation of the '445 device, to its construction, and to the know-how for making a device such as the '445, which interconnects the operations of the hoist and swing shafts and the brake. Plaintiff was the first individual to successfully connect the operation of these elements in the Thew 4–5 cranes. Plaintiff disclosed the information to the defendants shortly after he acquired it himself and, in any event, before he disclosed it to others. The evidence indicates that much of this know-how could not be acquired merely by observing a '445 device in operation and examining it. The jury's determination is supported by the substantial evidence in the record and will not be disturbed by this Court.

■ On the basis of the jury's findings with respect to Count 1, and on the basis of the Court's own findings with respect to the issues this Court must decide, the Court has determined that the plaintiff's '445 patent in suit is a valid and enforceable patent and has been infringed by the defendant's accused device. The Court has further found that the jury's determination with respect to Count 2 of the complaint is supported by substantial evidence and is proper.

■ The Court finds that the defendant had knowledge of the plaintiff's pending patent applications as early as 1958. The Court further finds that on or about August 1, 1962, defendant received a notice of patent infringement from plaintiff's attorney relating to the '445 patent. Having had knowledge of the contents of plaintiff's patent applications while these applications were on file, and having received actual notice of infringement after the issuance of plaintiff's '445 patent, the defendant's infringement of claims, 1, 2, 3, 4, 5, 6,

8, 9 and 12 of plaintiff's '445 patent is deemed to be deliberate, unconscionable, willful, and in bad faith. Defendant acquired this information from the plaintiff, and in utilizing the information breached a confidential relationship which existed. Furthermore, after acquiring knowledge of these otherwise secret patent applications and secret information, defendant deliberately and willfully undertook to infringe upon the device disclosed in the applications and to duplicate the information disclosed by the plaintiff. These acts of the defendant present special circumstances under which an award of reasonable attorneys' fees, costs, and interest is warranted.

It is, therefore, ordered as follows:

Plaintiff, William C. Holmes, is the owner of U. S. Patent No. 3,043,445 issued to William C. Holmes on July 10, 1962, and of the right to recover for infringement of the claims thereof.

That Letters Patent of the U. S. No. 3,043,445 issued on July 10, 1962, is valid as to claims 1, 2, 3, 4, 5, 6, 8, 9 and 12; and that the plaintiff, William C. Holmes, has been the lawful owner of the entire right, title and interest in and to the invention thereof ever since its day of issue.

The defendant, the Thew Shovel Company, has infringed Letters Patent No. 3,043,445 as to claims 1, 2, 3, 4, 5, 6, 8, 9 and 12 by its manufacture, use and/or sale of boom hoist mechanisms for its Thew Class 4–5 cranes as modified in 1961.

That a writ of injunction issue out of and under the seal of this Court directed to the said defendant, the Thew Shovel Company, and its successors, its officers, agents, attorneys, employees, associates and privies enjoining and restraining them and each of them from directly or indirectly infringing any of the claims 1, 2, 3, 4, 5, 6, 8, 9 and 12 of Letters Patent No. 3,043,445 during its term and from offering or advertising to do so and from aiding or abetting or in any way contributing to the infringement of any of said claims.

That the plaintiff, William C. Holmes, recover from the defendant, the Thew Shovel Company, and its successors, for defendant's infringement of claims 1, 2, 3, 4, 5, 6, 8, 9 and 12 of Letters Patent No. 3,043,445 damages according to law which shall be assessed together with costs to be taxed. Interest shall be payable on patent infringement damages and shall be computed at the rate of 6% from the time a royalty should have been paid. Reasonable attorneys' fees are to be awarded plaintiff in addition to other damages.

That the plaintiff, William C. Holmes, has developed valuable information pertaining to control devices for the Thew-Lorain Class 4–5 boom hoist mechanism and that a confidential relationship existed between the plaintiff, William C. Holmes, and the defendant, the Thew Shovel Company, under the terms of which it would be reasonably expected by both parties that Mr. Holmes would be compensated in the event that valuable information of Holmes was used by Thew Shovel.

That the defendant, the Thew Shovel Company, has acquired knowledge of the valuable information from William C. Holmes.

That the plaintiff, William C. Holmes, did not prior to, at the same time, or after the Thew Shovel Company acquired knowledge of the Holmes' valuable information disclose all of the information valuable to Thew Shovel to persons other than Thew Shovel.

That the defendant, the Thew Shovel Company, knowingly used valuable information of the plaintiff, William C. Holmes, which was not disclosed by him to others, without the consent of the plaintiff, William C. Holmes, in breach of the confidential relationship.

That a writ of injunction issue out of and under the seal of this Court directed to the said defendant, the Thew Shovel Company, and its successors, its officers, agents, attorneys, employees, associates and privies enjoining and restraining them and each of them from

using the valuable information acquired from William C. Holmes.

That the plaintiff, William C. Holmes, recover from the defendant, the Thew Shovel Company, for defendant's breach of its confidential relationship with William C. Holmes, damages according to law which shall be assessed together with costs to be taxed. Interest shall be payable on damages for breach of the confidential relationship computed at the rate of 6% from the time a royalty should have been paid. Reasonable attorneys' fees are to be awarded the plaintiff in addition to other damages.

That the plaintiff, William C. Holmes, recover from the defendant, the Thew Shovel Company, its costs and disbursements in this suit to be taxed by the Clerk.