Marino **ANTICI**

v.

The **KBH CORPORATION.**

No. DC 6941–K.

United States District Court,
N. D. Mississippi,
Delta Division.

Feb. 4, 1971.

John R. Walker, III, Memphis, Tenn., Leon L. Porter, Clarksdale, Miss., for plaintiff.

Hugh Carter, Birmingham, Ala., Tom T. Ross, Clarksdale, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This is a patent infringement suit brought by Marino Antici (Antici) against The KBH Corporation (KBH) in which Antici asserts that U. S. Patent No. 3,140,881, owned by him, has been infringed by KBH and its predecessor, Gotcher Engineering & Manufacturing Company, Inc. (Gotcher), after notice of claim of infringement, by their continued making, using and selling trailer hitches covered by said patent. Denying infringement, KBH challenges the validity of the patent-in-suit on various alternative grounds.

By pre-trial order the court reserved the matter of accounting and damages and confined the initial evidentiary hearing to questions of patent validity and infringement. After full evidentiary hearing on those issues and submission of memorandum briefs, the matter is now ripe for decision. For reasons that follow, we conclude that the patent is both valid and infringed upon.

In early November 1960 Antici, who was accustomed to operating farm vehicles, conceived the idea of an automatic latching, spring-loaded trailer hitch for mounting on the rear bumper of a towing vehicle. After building such device Antici tested it and found that it operated satisfactorily. At Antici's direction photographs were taken and drawing made of the device. With delay he consulted and engaged an attorney at Memphis, Tennessee, to make a patentability search and, upon receiving favorable report, filed an application for patent on March 31, 1961. Claims 1–4 were in the original patent application; and a continuation-in-part application, which was filed by him on March 27, 1962, added claims 5–9. On July 14, 1964, the U. S. Patent Office issued Letters Patent on the patent-in-suit to Antici who was then and still is the owner.

Shortly after he invented the trailer hitch device, plaintiff disclosed it to Robert Hunsucker, a KBH employee, who made drawings from his description. KBH actually made a similar bumper hitch on the basis of Hunsucker's information. This particular device, which was wholly derived from Antici's idea and made without his knowledge or consent, was experimental and, in January, 1961, sold to a customer. Neither KBH nor Hunsucker undertook to manufacture additional hitches and despite an initial inquiry to patent attorneys, they made no effort to procure a patent.

On August 31, 1964, Antici entered into a license agreement with Gotcher, whereby the latter made and sold bumper trailer hitches covered by the patent. The original design of patented trailer hitch, designated as BX–3, was during 1966 changed to a design referred to as BX–4. This change in design was for the purpose of efficiency and economy. Gotcher continued to pay to Antici the stipulated royalties on its BX–4 series and, in fact, published literature showing thereon the patent number of the patent-in-suit. Gotcher paid to Antici royalties as required by the license agreement on all trailer hitches through the first quarter of 1967. By that time Gotcher was experiencing financial difficulties and fell in arrears in its pay-

ments. Thereupon, Antici cancelled the license agreement with Gotcher because of the arrearage; the cancellation became effective September 22, 1967.

Notwithstanding this cancellation Gotcher continued to make bumper trailer hitches of its BX–4 series. In February 1969 Gotcher merged with KBH. After the merger KBH continued to make and sell trailer hitches of the BX–4 design despite the fact that both it and Gotcher received notice from Antici that they were infringing upon his patent. Defendant has had notice of the patent-in-suit since the date of its issue and continues to make and sell bumper trailer hitches of the BX–4 design.

## I. THE VALIDITY OF THE PATENT

We consider first the alleged invalidity of the patent-in-suit, noting that by statute a patent is presumed valid, and the burden of establishing invalidity rests always on the party asserting it.[1]

▆▆ To be worthy of the limited, private monopoly which is a patent, an invention must satisfy three criteria established by statutes and case law: (1) utility, (2) novelty, and (3) nonobviousness.[2] There being no dispute as to the utility of the Antici trailer hitch, whose fore and aft and horizontal adjustments, shock-absorbing springs, and automatic relatching features are extremely useful in attaching trailers to towing vehicles, we consider whether the hitch was "novel" within the strictures of the statutes and case law. 35 U.S.C. § 102[3] dictates that an invention is not novel or new in the public knowledge and, therefore, not patentable if it was known or used by others more than one year prior to the filing of the patentee's application, and the cases hold that even a single prior public use, or only a placing on sale, is sufficient to invalidate a patent under § 102(b).[4] Although prior public use must be proved at least by clear and convincing evidence, once a prima facie case of prior public use has been made, the burden of going forward with the evidence shifts to plaintiff, who then must show that the use was an experimental, restricted one; if the pat-

1. 35 U.S.C. § 282. For the rule concerning order of consideration of issues in a patent case, see Beckman Instruments, Inc. v. Chemtronics, Inc., 428 F.2d 555 (5 Cir. 1970), cert. den. 400 U.S. 956, 91 S.Ct. 354, 27 L.Ed.2d 264 (1970).

2. 35 U.S.C. §§ 102, 103. The power of Congress to enact these statutes is vested in Article I, § 8, Clause 8 of the Constitution. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Waldon, Inc. v. Alexander Mfg. Co., 423 F.2d 91 (5 Cir. 1970).

3. *§ 102. Conditions for patentability; novelty and loss of right to patent*
A person shall be entitled to a patent unless—
(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or
(c) he has abandoned the invention, or
(d) the invention was first patented or caused to be patented by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application filed more than twelve months before the filing of the application in the United States, or
(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or
(f) he did not himself invent the subject matter sought to be patented, or
(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

4. Strong v. General Electric Co., Fifth Circuit, 434 F.2d 1042, December 8, 1970.

entee fails to make such a showing, the invention is deemed to have been dedicated to the public, and is, therefore, unpatentable.[5]

In the case sub judice KBH charged in its answer that Antici abandoned his invention and allowed it to become public knowledge, thereby precluding its patentability under § 102. The evidence failed to sustain this contention. The testimony of KBH's witnesses was that its former employee, Hunsucker, who is now deceased, actually made one experimental hitch (Ex. 28), which was substantially identical in structure and operation to the patent-in-suit, and in January 1961 KBH sold it to a local customer, Gibson. We reject the suggestion that Hunsucker might have invented the device, and are convinced from the weight of the evidence that Antici invented the device, and although he revealed his secret invention to Hunsucker, he did not intend to abandon it, and in fact filed his original patent application containing all of the material patent claims on March 31, 1961, only about four months after conceiving the invention and revealing it to Hunsucker. Although Antici styled his second application a continuation-in-part-application, the second filing, despite its nomenclature, did not put forward any claims materially different from those disclosed in the original application. We note that the second application only made certain language changes not affecting the meaning of the prior application and did not materially broaden the scope of the original claims. Consequently the filing date of the parent application controls.[6] Therefore, any prior public use occurred very shortly before the filing of application, and the one-year requirement of § 102 was thus avoided, and KBH's first attack on the patent-in-suit must fail.

█ Next, defendant vigorously contends that Antici's patent is invalid because each and every substantial part thereof was anticipated by the prior art. The evidence showed that many separate elements of the Antici hitch appeared in the prior art in one form or another well before plaintiff's application was filed. Antici contends that the novelty of his invention lies in the new and unique combination of the elements used to reach a different and better result. Although it is true that the mere joining of the teachings of two or more prior patents in a single device does not necessarily result in patentable invention, novel improvement combinations of known elements are patentable even though each constituent element may be revealed by the prior art.[7] For there to be anticipation of the device by the prior art, each claim of the patent-in-suit must be embodied in a *single* prior art reference, and the prior reference must contain within its four corners adequate directions for the practice of the patent claim invalidated.[8] Otherwise stated, for a prior patent to anticipate an invention under § 102, it is necessary that the prior patent teach in a single

---

5. Metal Arts Co. v. Fuller Co., 389 F.2d 319 (5 Cir. 1968) ; Southern Implement Mfg. Co. v. McLemore, 350 F.2d 244 (5 Cir. 1964) ; Strong v. General Electric, supra.

6. 35 U.S.C. § 120. Coats Loaders & Stackers, Inc. v. Henderson, 233 F.2d 915 (6 Cir. 1956) ; Pursche v. Atlas Scraper & Engineering Co., 300 F.2d 467 (9 Cir. 1961) ; Holmes v. Thew Shovel Co., 305 F.Supp. 139 (N.D.Ohio 1969) ; Indiana General Corp. v. Krystinel Corp., 297 F. Supp. 427 (S.D.N.Y.1969). It is only where the second application discloses subject matter which was not contained in the first application that the filing date of the second application controls. Great

Lakes Carbon Corp. v. Continental Oil Co., 219 F.Supp. 468 (W.D.La.1963), aff'd. 345 F.2d 175 (5 Cir. 1965), cert. den. 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed. 2d 158.

7. Hotchkiss v. Greenwood, 52 U.S. 248, 13 L.Ed. 683, 684 (1850) ; Spray–Bilt, Inc. v. Ingersoll–Rand World Trade, Ltd., 350 F.2d 99 (5 Cir. 1965) ; Hensley Equipment Co., Inc. v. Esco Corp., 383 F.2d 252 (5 Cir. 1967) ; Cameron Ironworks, Inc. v. Stekoll, 242 F.2d 17 (5 Cir. 1957).

8. National Athletic Supply Corp. v. Tone–O–Matic Products, Inc., 421 F.2d 407 (5 Cir. 1970) ; Straussler v. United States, 339 F.2d 670, 168 Ct.Cl. 852 (1964).

structural combination all of the elements of the invention; additionally, the elements must perform substantially the same function in substantially the same way to achieve substantially the same result in both the prior patent and the claimed invention.[9]

The material elements of the patent-in-suit are the following: a drawbar slidably extending through slots in a supporting casing with shock-absorbing springs yieldably restraining fore and aft movement; holes in the drawbar, and a latching pin, removably supported in a carrier means or yoke slidably surrounding the casing, with a spring forcing the pin toward a latched position within one of the holes in the drawbar; a slot in the bumper of the towing vehicle permitting horizontal as well as fore and aft movement of the drawbar and a hole-and-pin arrangement for automatic horizontal relatching similar to the fore and aft relatching device. The purpose of the device is to facilitate joinder of a trailer and towing vehicle by means of moving the adjustable drawbar rather than moving the towing vehicle, which can be extremely difficult and time-consuming. See Appendix "A" for drawings of the Antici hitch.

Many of the above elements or their equivalents may be found in one or another of the prior patents cited by the Patent Office examiner, and some are also duplicated by the additional prior art cited by KBH. Yet, no one prior art reference reads directly upon all of the material elements of the Antici device, and all items in the prior art either have entirely different purposes and functions or else perform some of the same functions as Antici in a partial, limited, or less efficient manner.

Considering the Antici patent by its separate claims, Claims #1, 2, 3 and 5 contain all of the substantial and material claims of the patent. Claims #4, 6,

7, 8 and 9 do not mention horizontal movement and automatic latching thereon.

Of the 5 prior patents cited by the examiner, Cadman #1,304,261 (1919) has horizontal swinging with manual latching and fore-and-aft telescoping, but has no provision for fore and aft latching at all and is shock absorbing in only one direction. Eckertz #1,422,189 (1922) has automatic latching on horizontal swinging, but longitudinal latching only at the opposite ends of a single spring and by means of a complex multi-sleeve arrangement rather than a simple pin located between fore and aft springs. See Appendix "B" for drawing of Eckertz '189. Schrum #1,491,637 (1924) has no provision for automatic latching or springs on fore and aft movement. Robinson #1,838,499 (1931) teaches a flexible drawbar connection for relieving strain between the towing vehicle and its trailer, but does not have the automatic latching of the Antici hitch. Carson #2,988,383 (1961) has a telescoping drawbar fore and aft and horizontal swinging with automatic latching, but has no automatic latching fore and aft and no shock-absorbing springs.

KBH has cited six additional prior patents, alleging them to be more pertinent than those considered by the examiner. Where such additional prior art not considered by the examiner is cited, the court must decide whether the new references are of such significance that the statutory presumption of validity is affected. If the new references are pertinent and significant, the presumption of validity based on the examiner's determination is greatly weakened, if not destroyed.[10]

We conclude that at least 5 of the 6 patents cited by KBH are either duplicative of the prior art considered by the examiner or do not read upon the Antici claims. Wilson #2,783,039 (1957), Gra-

9. Simmonds Precision Products, Inc. v. U. S., 153 U.S.P.Q. 465 (Ct.Cl.1967); Felburn v. New York Central R.R., 350 F.2d 416, 420–421 (6 Cir. 1965); McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381, 398 (10 Cir. 1965).

10. Metal Arts Co. v. Fuller Co., 389 F.2d 319 at 321–322 (5 Cir. 1968); American Seating Co. v. Southeastern Metals Co., 412 F.2d 756 (5 Cir. 1969).

ham #2,127,912 (1938), Johnston #1,-183,880 (1916) and Johnson #2,127,689 (1938) provide for fore and aft shock absorbing but have no automatic latching between springs and drawbar, and these references are no closer to Antici's hitch than the prior art cited by the examiner. Goodhue #1,068,334 (1913) has automatic latching on horizontal movement but lacks shock-absorbing springs fore and aft, and merely telescopes like Carson '383, cited by the examiner.

The remaining new reference is discussed in detail since KBH relies heavily thereon. Cadman #1,308,039 (1919) does not provide for any horizontal movement and automatic latching thereon, so it cannot anticipate Antici's claims 1, 2, 3 and 5, which teach such horizontal operations as essential elements of their claims. Nor does Cadman '039, as revealed by its drawings and model placed in evidence by KBH, read upon the purely longitudinal claims of Antici, i. e., #4, 6, 7, 8 and 9. First of all, since the problem solved by Cadman was totally different from that of Antici, and since Cadman's device would have to be distorted from its original design and purpose to read upon Antici, Cadman '039 cannot be said to anticipate Antici.[11] Cadman sought to eliminate strains on bolsters used for holding logs on a log-hauling truck and attached trailer when turning corners or moving over hilly ground. As Cadman's drawing shows, this was to be done by means of a springloaded, telescoping drawbar, without any concept of automatic latching. Secondly, the pin-and-hole arrangement used to relatch the Cadman drawbar was limited in his claims to use for manually adjusting the length of the drawbar according to the length of the logs being hauled, and did not teach automatic relatching during hauling; even if the Cadman claims could be construed to imply automatic relatching of the drawbar during hauling movement, they do not anticipate Antici's automatic relatching for the purpose of facilitating the original hitching process, but teach only adjustments in eliminating strain during hauling. Again, Cadman contemplates initial hitching of the towing vehicle and trailer by means of a primitive ball-and-socket attachment, and does not teach adjustment of drawbar length to facilitate hitching followed by automatic relatching once in motion. Lastly, Cadman '039 does not teach a slidably adjustable carrier means for holding the latching pin, but a mere stationary bar attached to the body of the trailer and jutting out above the drawbar, which is less efficient than Antici's yoke in allowing extension and retraction of the drawbar and its relatching in different positions. Thus, it appears that Cadman '039 is neither pertinent to nor anticipatory of any of the Antici claims. See Appendix "C" for drawing of Cadman '039.

Thus we are compelled to find that none of the new references upon which KBH relies are sufficiently pertinent to affect the presumption of validity attaching to the patent-in-suit. Even considered anew without benefit of the presumption, we are convinced that the weight of the evidence upholds the validity of all claims of Antici's patent with respect to anticipation by the prior art.

KBH also asserts the patent is invalid under the third test of patent validity, which is the non-obviousness re-

11. United States v. Adams, 383 U.S. 39, 51, 86 S.Ct. 708, 15 L.Ed.2d 572, 580 (1966); Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 69, 43 S.Ct. 322, 67 L.Ed. 523, 535 (1923); see also Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 828, 36 L.Ed. 658, 661 (1892), cited in In Re Application of Wells, 53 F.2d 537, 539 (U.S.Ct. of Cust. & Pat.App.1931). Quoting in part from Judge Hand, the *Wells* court stated: "It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions. * * * An earlier device, which must be distorted from its obvious design, cannot be an anticipation." Block v. Nathan Anklet Support Co., 9 F.2d 311 at 312 (2 Cir. 1925).

quirement. This standard was enacted by Congress in 1952 as a codification of prevailing case law and replaced the former "flash of creative genius" and "new result" tests.[12] As applied by the courts, obviousness is a question of law to be decided against a background of factual findings including: (1) the scope and content of the prior art; (2) the ordinary level of skill in the art; and (3) the differences between the prior art and the patent-in-suit.[13] Otherwise stated, an invention is too obvious to deserve a patent if a person of average mechanical skill in the particular art, who was aware of the prior art, would find the invention, as a whole, obvious.[14]

The foregoing test is not always easy of application, and the courts have gradually evolved guidelines to follow in judging § 103 obviousness. As Judge Learned Hand stated:

"The test laid down is indeed misty enough. It directs us to surmise what was the range of ingenuity of a person 'having ordinary skill' in an 'art' with which we are totally unfamiliar; and we do not see how such a standard can be applied at all except by recourse to the early work in the art, and to the general history of the means available at the time. To judge on our own that this or that new assemblage of old factors was, or was not, 'obvious' is to substitute our igno-

rance for the acquaintance with the subject of those who are familiar with it. There are indeed some signposts: e. g., how long did the need exist; how many tried to find a way; how long did the surrounding and accessory arts disclose the means; how immediately was the invention recognized as an answer by those who used the new variant?" Reiner v. I. Leon Co., 285 F.2d 501 at 503–504 (2 Cir. 1960).[15]

Of course, the presumption of validity established by § 282 is also to be considered in determining obviousness, and although it may be rebutted, the burden of proving invalidity is a heavy one, which requires the party alleging the invalidity of a patent to establish invalidity by clear and convincing evidence; furthermore, the presumption of validity is strengthened when the prior art cited by the patent office is at least as relevant to the claimed invention as the new references cited by defendant, as is the case here; and the citation of a large number of new references, as KBH has done here, is evidence of the weakness of the contention of invalidity.[16]

The prior art cited by the examiner and by KBH indicates to us that the problem of hitching a towed vehicle to a towing vehicle must have existed since relatively ancient times, and, therefore,

12. 35 U.S.C. § 103. *Conditions for patentability; non-obvious subject matter*
 A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

13. Graham v. John Deere Co., supra; Waldon, Inc. v. Alexander Mfg. Co., 423 F.2d 91 (5 Cir. 1970); Kiva Corp. v. Baker Oil Tools, Inc., 412 F.2d 546 (5 Cir. 1969); Swofford v. B & W, Inc., 395 F.2d 362 (5 Cir. 1968).

14. National Filters, Inc. v. Research Products Corp., 384 F.2d 516 (5 Cir. 1967); T. P. Laboratories, Inc. v. Huge, 371 F.2d 231 (7 Cir. 1966).

15. See also Graham v. John Deere Co., supra, and the critical analysis of its standards in Kitch, "Graham v. John Deere Co.: New Standards for Patents," The Supreme Court Review, pp. 293–346 (1966); and Note, "Subtests of 'Nonobviousness': a Non-Technical Approach to Patent Validity," 112 U.Pa.L. Rev. 1169 (1964).

16. Arthur J. Schmitt Foundation v. Stockham Valves and Fittings, Inc., 292 F. Supp. 893 (N.D.Ala.1966), aff'd 404 F.2d 13 (5 Cir. 1968); Strong v. General Electric, supra.

many persons must have sought practical solutions for the broad variety of problems presented by different hitching situations. While this might suggest the prior art to be of a high level, the fact is, as one of plaintiff's patent searchers declared, "the art is not very good." Most of the devices cited by both the examiner and defendant are simple spring-cushioned hitches for absorbing shocks or equally simple horizontally swinging drawbars. The more complicated and ingenious devices, such as Goodhue '334 and Cadman '261, were directed to the solution of specific, narrow problems, such as keeping hay racks level or log trailers free from strain, which are totally unrelated to the hitching problem Antici sought to solve and should be considered relevant only in the very broadest sense. Such references, if pertinent at all, should be compared with the patent-in-suit only with great caution to avoid hindsight, since it would take substantial modification of the prior inventors' conceptions to envision using their principles in totally different ways to achieve the totally different results sought by Antici.[16A] We also note that although there were a number of hitches with highly useful, adjustable features patented as much as 40 years ago, there was still room in the field for Wilson in 1957 and Carson in 1959 and 1961 to receive patents for relatively simple devices. Thus within the narrow field of easy hitching and automatic relatching, in which Antici was operating, there was a rather large number of basically simple devices revealing a comparatively low level of invention and only a few of the elements of Antici's invention in combination. Within the much broader area of all trailer hitches and attachments, however, there may be found more of Antici's elements in combination in a few truly ingenious devices, most of which are, however, very remote in both conception and operation

from Antici. Even the closest reference, Eckertz '189, although it could be used to solve some of the same problems as Antici, does so by very different means, more complicated means, and in a partial, less efficient manner. Thus the prior art directly and narrowly pertinent to Antici is relatively limited in scope and content, thereby broadening the range open for invention within that specific area. We note that Antici's claims are narrowly stated and strictly limited to the precise functions claimed therein, which we have already discussed, and therefore his patent claims must not be construed broadly so as to encompass and interdict any other functions or uses in the trailer hitch art not specifically set forth in the Antici specifications. *Beckman,* supra.

This fact also indicates to us that the prior art, which we take to be the 11 patents previously discussed, must have been created by persons of relatively limited mechanical training, such as clever farmers or welders, rather than by professional, scientifically-trained experts, such as might normally be expected to invent a chemical process. Also, the "person of average skill in the art" under § 103, who is the patent law equivalent of the "reasonable man" of tort law, is neither a genius nor an expert, and he is not expected to think entirely in terms of theoretical, physical principles, but is much more likely to be motivated by more mundane considerations, such as practical, functional use of the prior art devices, particularly in a field such as trailer hitches. Moreover, the level of skill of the average mechanic should not be equated with that of the inventors of the prior art cited. Their skill, since it was thought worthy of a patent, and defendant has cited no case to us in which a trailer hitch patent has been held invalid, must be considered greater than that of the average mechanic in the field.

---

16A. Courts must "guard against slipping into the use of hindsight" and "resist the temptation to read into the prior art the teachings of the invention in issue." Calmar, Inc. v. Cook Chemical Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

We think it particularly significant that Cadman, who invented two of the better prior art hitches containing certain essential elements of the Antici hitch, but used them in different ways to solve different problems, must have been aware of the problem later solved by Antici, yet never thought to put the principles before him into use by combining them into a single, simply-operated and efficient hitch such as Antici's. If Cadman, an inventor of above average skill, possessing the principles of the Antici device more than 50 years ago, did not solve the problem of hitching a trailer to a towing vehicle without necessity of perfect juxtaposition of the hitching members, how could the solution be considered "obvious" now, after his principles have been on the books for all subsequent inventors to see for 50 years hence? We agree with plaintiff's experts, who testified that the Antici combination would not have been obvious to an expert in the field, even less so to a person of only ordinary skill in the art.

Two other subtests of obviousness commonly applied are also met by the Antici patent: commercial success and copying. As defendant's witnesses testified, both KBH and its predecessor, Gotcher, which had paid Antici a royalty to produce and sell his patented hitch, had a good market for the hitch, which sold well to farmers both in Mississippi and in neighboring states. Another conclusion which emerges from the evidence is that Gotcher and KBH saw the value of Antici's improvement over existing trailer hitches and sought to profit by copying his invention and selling it themselves. Such copying itself is evidence of patentability.[17]

Antici's invention was a distinct improvement over the prior art in that it combined a spring-loaded bumper hitch having a sliding drawbar located between shock-absorbing springs with the concept of horizontal swinging and automatic relatching in both directions. Antici also teaches that the vertical locking pin rests in a carrier means or yoke slidably surrounding the casing which supports the drawbar. Placement of the pin in the yoke between the springs was cited by plaintiff's experts as a completely new arrangement not found in the prior art, and we agree. The patent-in-suit differs from the prior art and is an improvement over it in that it allows movement of the drawbar to an infinite number of positions within a given area followed by automatic relatching into a stable, spring-cushioned position without necessity for the driver to dismount from the towing vehicle. When not in use, the drawbar may be withdrawn through the slot in the bumper and housed beneath the vehicle out of the way. This combination of the elements of the prior art is new, useful and would not have been obvious to a person of average skill in the trailer hitch art even if he had had all the prior art before him.

## II. INFRINGEMENT

Having determined the Antici patent to be valid, we next consider the question of infringement. Patent infringement is always a question of fact and exists when the accused device and the teachings of the patent-in-suit are substantially identical in structure, mode of operation, and results accomplished.[18] Admittedly, there is no literal infringement of plaintiff's claims, since the KBH hitch utilizes a drawbar between two springs which are not enclosed in a casing, as they are in Antici's invention. This is the only difference between the two devices, apart from entirely formal changes made in the manner of locking the drawbar. Antici contends, however, that the accused hitch is the functional

17. Arthur J. Schmitt Foundation v. Stockham Valves and Fittings, Inc., supra.

18. Fraser v. City of San Antonio, Texas, 430 F.2d 1218 (5 Cir. 1970); United States Industries, Inc. v. Otis Engineering Corp., 254 F.2d 198 (5 Cir. 1958); Stewart-Warner Corp. v. Lone Star Gas Co., 195 F.2d 645 (5 Cir. 1952).

and structural equivalent of his own hitch.

The Supreme Court has articulated the rationale of the doctrine of "equivalents" as follows:

"But courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system * * * The theory on which it is founded is that 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." Graver Tank Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

The Fifth Circuit has frequently applied the doctrine of equivalents, describing its operation in a recent case thus:

"We are not concerned here with determining whether defendant's device, which plaintiffs charge is an infringement of the Matthews patent, is exactly the same in appearance or in form, but merely whether it is substantially the same in function. * * * The doctrine of equivalency has never been a mere dry bones doctrine. Put forward to do justice and prevent defrauding by dissimulation and deceit, it should be, it has been, applied to give its equitable purpose effect. Not at all recondite or difficult of understanding or application, it is the mere expression and application of the view that like things are alike and that they are not made unlike for formal and nonsubstantial changes, no matter how cunningly contrived the dissimulation, how clever the changes in form." Samuelson v. Bethlehem Steel Co., 323 F.2d 944 at 949–950 (5 Cir. 1963), quoting Matthews v. Koolvent Metal Awning Co., 158 F.2d 37, 40 (5 Cir. 1946).[19]

A comparison of the function of the enclosed springs on the Antici hitch and the exposed springs on the accused hitch clearly reveals that they perform substantially the same function, i. e., absorbing fore and aft shocks, in substantially the same way, i. e., by means of two springs held in place by end members. The only real dispute on the question of infringement concerns the importance of the "casing" which is mentioned in every single claim of the Antici patent, and which KBH argues is essential to the Antici patent and absent from the accused hitch.

Antici argues that the word "casing" refers only to the group of attached members which support the drawbar and springs, and does not signify a complete enclosure or sleeve as KBH contends. Plaintiff points to the wide-open gaps in the top, bottom and sides of the "casings" on the two of his hitches introduced in evidence (Ex. 1 and 2), asserts that the patentee is his own lexicographer, and the construction which he places on the verbiage of this claim

19. See also Binks Mfg. Co. v. Spee-Flo Mfg. Corp., 392 F.2d 585 (5 Cir. 1968); Up-right, Inc. v. Safway Products, Inc., 315 F.2d 23 (5 Cir. 1963); Southern Saw Service v. Pittsburgh-Erie Saw Corp., 239 F.2d 339 (5 Cir. 1957); Abbott v. Barrentine Mfg. Co., Inc., 255 F. Supp. 890 (N.D.Miss.1965).

should be accepted unless clearly unreasonable.[20] Referring to Antici's patent application, we observe that the descriptions of the device relating it to the drawing mention a "casing" (13) only in very general terms and do not specify its function. Claim #1 begins:

"A trailer hitch for vehicles comprising a *casing* including a body portion and a pair of end pieces fixedly attached to said body portion adjacent the opposite ends thereof, said end pieces being provided with aligned openings therethrough, a draw bar slidably extending through said casing and projecting outwardly in opposite directions through said openings * * *" (Emphasis added).

Claims #2, 3, 4 and 5 are substantially identical in describing the casing. Claim #6 teaches:

"A trailer hitch for vehicles comprising a *casing, a draw bar slidably supported in said casing* * * *" (Emphasis added)

Claims #7, 8 and 9 also teach a drawbar slidably supported in a casing. Antici argues that since the word "casing" is not clearly defined in Claims 1–5 as to its purpose, and defined in Claims 6–9 only as supporting the drawbar, it should be thus limited in its meaning. We agree. There is no hint in any claim that the "casing" was to be used as a protective covering, or in fact, as any covering at all. The only discernible purpose for it is to give a point of support to the drawbar and pin, which is precisely the purpose of the end pieces and horizontal connecting pieces of defendant's device.

The end result is that KBH's arrangement merely exposed the springs more than Antici's device, but the accused hitch clearly appropriated the substance of Antici's invention, since the KBH hitch, by minor variations in form, performs substantially the same function in substantially the same way to obtain the same result. We agree with plaintiff's argument that the variations in the accused hitch are merely colorable, which bring it plainly within the rule of equivalents. The record is replete with evidence that Gotcher, the original infringer, acknowledged the Antici patent to be the source of the infringing BX–4 series device, which was first manufactured in 1966. KBH is no less guilty of infringement because, following its merger with Gotcher, it continued to exploit the patent-in-suit by the manufacture and sale of the same accused hitch, the BX–4 series.

■ Finally, there is no basis for applying to the facts of this case the doctrine of "file wrapper estoppel", another defense which is invoked by KBH.[21] The history of the prosecution of Antici's claims in the Patent Office does not reveal any inconsistency between what was required and done there and what is now claimed in this proceeding. We hold that Antici's claims as allowed by the Patent Office are infringed upon by the accused hitch, without the inclusion of any matter that was rejected by the Patent Office. Since there has been no attempt by Antici to recapture, revive or restore something that had been abandoned or surrendered by him in the Patent Office, the defense of file wrapper estoppel must necessarily fail.

A judgment declaring the patent-in-suit to be valid and infringed upon by defendant shall be entered. The parties are directed within 60 days from this date to submit pre-trial order enumerating the issues concerning damages and accounting that remain for trial.

20. Thurber Corp. v. Fairchild Motor Corp., 269 F.2d 841 (5 Cir. 1959).

21. Up-right, Inc. v. Safway Products, Inc., 315 F.2d 23 (5 Cir. 1963). Judge Wisdom, speaking for the court in Edward Valves, Inc. v. Cameron Iron Works, Inc., 286 F.2d 933, at 943 (5 Cir. 1961), said: "That doctrine applies when a patentee, required to give up certain subject matter in order to obtain his patent, later attempts to construe the allowed claims to recapture that which he has surrendered. The doctrine prohibits the revival and restoration of an abandoned claim to the patent by reading it into the claims that are allowed."

247

APPENDIX "A"

July 14, 1964 M. ANTICI 3,140,881

TRAILER HITCH

Filed March 27, 1962 2 Sheets-Sheet 1

FIG. 1

FIG. 2

FIG. 3

FIG. 4

INVENTOR.
MARINO ANTICI
BY John R. Walker, II
attorney

[A3602]

July 14, 1964 M. ANTICI 3,140,881
 TRAILER HITCH

Filed March 27, 1962 2 Sheets—Sheet 2

FIG. 5

FIG. 6

FIG. 7 FIG. 8 FIG. 9

FIG. 10

INVENTOR.
MARINO ANTICI
BY John R. Walker, II
 attorney

[A3603]

H. ECKERTZ.
COUPLING MEMBER FOR VEHICLES.
APPLICATION FILED SEPT. 7, 1920.

1,422,189.

Patented July 11, 1922.
4 SHEETS—SHEET 1.

*Fig. 1.*

Inventor
Heinrich Eckertz
By Knight Bros
Attys.

[A3604]

H. ECKERTZ.
COUPLING MEMBER FOR VEHICLES.
APPLICATION FILED SEPT. 7, 1920.

1,422,189.

Patented July 11, 1922.
4 SHEETS—SHEET 2.

Fig. 2.

Fig. 3.

Fig. 4.

Inventor
Heinrich Eckertz
By Knight Bros
attys

[A3605]

APPENDIX "C"

A. B. CADMAN.
MEANS FOR TRANSPORTING LOGS OR THE LIKE.
APPLICATION FILED JAN. 20, 1919.

1308,039.

Patented July 1, 1919.
3 SHEETS—SHEET 1.

Fig. 1.

Fig. 6.

Fig. 5.

Witness.
Harry S. Gaither

Inventor.
Addi Benjamin Cadman
By Miller Chindahl Parker
Attys

[A3606]

A. B. CADMAN.
MEANS FOR TRANSPORTING LOGS OR THE LIKE.
APPLICATION FILED JAN. 28, 1918.

1,308,039.

Patented July 1, 1919.
3 SHEETS—SHEET 2.

FIG. 2.

FIG. 4.

FIG. 3.

Inventor:
Addi Benjamin Cadman
By Miller Chindahl Parker
Attys

Witness:
Harry S. Gaither

[A3607]